**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| MICHELE LYONS, on her own behalf, and on behalf of her minor children, C.L., M.L., S.L., and R.L.,<br><br>Plaintiffs,<br><br>v.<br><br>CARMEL UNIFIED SCHOOL DISTRICT; TED KNIGHT, in his official capacity as Superintendent of Carmel Unified School District; and JAY MARDEN, in his official capacity as Principal of Carmel River Elementary School,<br><br>Defendants. | Case No. 21-cv-09461-BLF<br><br>**ORDER DENYING PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br><br>[Re: ECF 2] |

Plaintiff Michele Lyons, acting on behalf of herself and her minor children, sues the Carmel Unified School District ("District") and two of its officials, claiming that Defendants endorse Christian beliefs and traditions while disfavoring those of other religions. Ms. Lyons' children allegedly have been made to feel like outsiders while attending school in the District, because they are Jewish rather than Christian. Plaintiffs assert claims for violations of their federal constitutional rights under the First and Fourteenth Amendments, seeking injunctive and declaratory relief only.

This order addresses Plaintiffs' application for a temporary restraining order ("TRO"), which was filed in conjunction with the complaint on December 7, 2021. Plaintiffs seek injunctive relief that would allow Ms. Lyons to display a 6-foot inflatable menorah at an after-school tree lighting event scheduled for December 10, 2021. Defendants specially appeared and filed opposition on the morning of December 9, 2021. The Court held a hearing on December 9, 2021 at 12:30 p.m. At the conclusion of the hearing, the Court denied the TRO application on the record.

This order explains more fully why the TRO application is DENIED.

## I. INTRODUCTION

Ms. Lyons enrolled her four children in the District in 2018. *See* Lyons Decl. ¶ 2, ECF 2-2. Three of the children have attended Carmel River Elementary School, also referred to in the papers as Carmel River School ("the School"), which is in the District. *See id.* In Ms. Lyons' view, the School's faculty shows a marked preference for Christianity over other religions, as classroom discussions and parties allegedly are limited to Christmas, Easter, and other Christian holidays, without similar discussions or celebrations of non-Christian holidays such as Hanukkah and Passover. *See id.* ¶¶ 3-8. Ms. Lyons asserts that when teachers do refer to Hanukkah, they characterize it as "an Israeli holiday," whereas Christmas is characterized as "an American holiday." *Id.* ¶ 6. At one School event, the music teacher allegedly introduced the song "I had a little dreidel" as "an Israeli song," even though the song was in English. *Id.* ¶ 7. Ms. Lyons understands the teachers to be implying that Hanukkah is less American than Christmas, and that Ms. Lyons and her children are less American than others because they are Jewish. *See id.*

The School's Parent Teacher Association ("PTA") has scheduled a tree lighting event at the School for December 10, 2021. *See* Marden Decl. ¶¶ 5-6. The event will involve decorating an existing tree growing on School grounds. *See id.* ¶¶ 5-7. The PTA obtained approval for the event pursuant to written policies and regulations governing use of school facilities. *See id.* ¶ 6. The tree to be decorated has not previously been the used for a tree lighting ceremony. *See id.* ¶ 8. After the conclusion of the tree lighting event, all decorations will be removed from the tree before school begins on the following Monday. *See id.* ¶ 9.

Upon learning of the tree lighting, Ms. Lyons sought permission to display a 6-foot inflatable menorah at the event. Ms. Lyons says that the PTA President agreed to the display but indicated that the School Principal's approval was required. *See* Lyons Decl. ¶ 16. Over the next few days, Ms. Lyons made several requests to the School Principal, Jay Marden, and the District Superintendent, Ted Knight, for permission to display a menorah at the tree lighting. *See id.* ¶ 19. She received numerous emails during that period, including a December 2 email from Principal Marden stating that he was "fully supportive of including a Menorah or any other secular or religious symbol at the tree lighting." *Id.* ¶ 20 & Exh. C.

2

On December 3, 2021, Principal Marden sent out a schoolwide email with a link to a flyer for the "River School, PTA Tree Lighting." *Id*. ¶ 27 & Exh. F. The flyer stated that, "We encourage students and their families to decorate the tree with an item that reflects their families values, heritage and/or faith. Please ensure, due to capacity limitations, that the item can fit inside a lunch, paper bag." *Id*. Exh. F.

Ms. Lyons does not own a menorah that can fit inside a paper lunch bag and she does not believe that a menorah is an appropriate Christmas tree ornament. *See* Lyons Decl. ¶¶ 30-34. Based on Principal Marden's earlier email that he was "fully supportive" of inclusion of menorahs in the tree lighting event, Ms. Lyons "deduce[d]" that menorahs did not fall within the size restriction on ornaments. *See id.* ¶ 35. Ms. Lyons created a flyer that is nearly identical in appearance to the original flyer for the tree lighting event, but she replaced the heading "River School, PTA Tree Lighting" with the heading "River Families Menorah Lighting." *Id*. & Exh. I. In place of the language on the original flyer inviting students and families to decorate the tree, Ms. Lyons' flyer contains the following language: "We encourage students and their families to bring menorahs that reflect their families values, heritage and/or faith. Students can also bring a drawing of a menorah, Kinara, Hanukkiah, or any multi-pronged candelabra." *Id*. Ms. Lyons emailed her flyer to other School families on December 5, 2021. *See id.* ¶¶ 36-37.

Superintendent Knight emailed Ms. Lyons on December 5, 2021, stating that he expects her to comply with the PTA's parameters for participation in the tree lighting event, those parameters do not include a large blowup menorah, his decision is final, and she should follow Principal Marden's direction on the issue. *See* Lyons Decl. ¶ 40 & Exh. J. Principal Marden emailed Ms. Lyons on December 6, 2021, stating that there will be no menorah lighting and that the School's families would be instructed to disregard the flyer advertising a menorah lighting. *See* Lyons Decl. ¶ 42 & Exh. K. Principal Marden sent an email to the entire school, stating that the PTA tree lighting will go forward as previously advertised, that the PTA is not hosting a menorah lighting, and that an "altered invitation" containing false information had been sent out without approval. Lyons Decl. ¶ 46 & Exh. L.

On December 7, 2021, Plaintiffs' counsel emailed Superintendent Knight, asking for a

3

1  "yes" or "no" response to the question of whether Ms. Lyons may display the inflatable menorah
2  at the tree lighting. *See* Compl. Exh. 1. Counsel for the District responded by email on the same
3  date, stating that the tree lighting is being held by the PTA, not the District, and that it will take
4  place on School grounds pursuant to the PTA's request to utilize District facilities under the Civic
5  Center Act. *See id.* The District's counsel indicated that he interpreted Ms. Lyons' request to
6  display an inflatable menorah as a request for use of District facilities under the Civic Center Act.
7  *See id.* Counsel stated that Ms. Lyons could submit a formal request for such use, but the District
8  does not grant requests for multiple use of School facilities at the same time. *See id.*

9  Plaintiffs filed this lawsuit on December 7, 2021, asserting claims against the District,
10 Superintendent Knight in his official capacity, and Principal Marden in his official capacity. *See*
11 Compl., ECF 1. The complaint alleges the following claims: (1) Establishment Clause – First
12 Amendment; (2) Freedom of Speech – First Amendment; (3) Free Exercise – First Amendment;
13 (4) Equal Protection – Fourteenth Amendment; and (5) Retaliation – First Amendment. *See id.*

14 Plaintiffs also filed the present TRO application, seeking injunctive relief that will allow
15 Ms. Lyons to display an inflatable menorah at the tree lighting on December 10, 2021.

16 **II.   LEGAL STANDARD**

17 The standard for issuing a temporary restraining order is identical to the standard for
18 issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d
19 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp.
20 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an
21 extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled
22 to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

23 A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to
24 succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary
25 relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public
26 interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions
27 going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary
28 injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the

other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

Where a party seeks mandatory injunctive relief, "she must establish that the law and facts *clearly favor her position*, not simply that she is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis added). An injunction is mandatory if it "orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation marks and citation omitted). Mandatory injunctive relief goes beyond prohibitory injunctive relief, which only "prohibits a party from taking action and preserve[s] the status quo pending a determination of the action on the merits." *Id*. at 878 (internal quotation marks and citation omitted). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result[,] and are not issued in doubtful cases." *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) (internal quotation marks and citation omitted).

## III. DISCUSSION

Plaintiffs frame their TRO application as seeking prohibitory injunctive relief, asking that the Court enjoin Defendants from "[t]aking any action or applying any policy or procedure that discourages, intimidates, blocks, or prevents Plaintiffs from displaying a 6-foot, inflatable menorah at the Carmel River School tree lighting on December 10, 2021 within reasonable proximity of the tree that is going to be lit and decorated." Prop. Order at 2, ECF 2-3. Defendants argue that the TRO application actually seeks mandatory injunctive relief, because Plaintiffs ask that Defendants be ordered to allow Ms. Lyons to display her menorah at the tree lighting. Defendants argue that such an order would not simply maintain the status quo. The Court agrees. The currently planned event is a tree lighting, with community participation limited to decorating the tree. An order requiring Defendants to modify the event to allow Ms. Lyons to participate in a different way, by displaying a 6-foot inflatable menorah, would be a mandatory injunction. Accordingly, to demonstrate entitlement to the requested relief, Plaintiffs must show not only that they are likely to succeed on the claims asserted in the complaint, but "that the law and facts clearly favor" their position. *Garcia*, 786 F.3d 740.

1    As discussed below, Plaintiffs have not satisfied this heavy burden as to any of the claims
2    alleged in the complaint, and for that reason their TRO application must be denied. Having
3    reached this conclusion, the Court need not discuss the remaining *Winter* factors. Before
4    addressing each of Plaintiffs' claims, the Court makes two observations that apply to the
5    complaint as a whole.

6    First, Defendants have suggested their only role in the tree lighting event was to approve
7    the PTA's request to utilize District facilities under the Civic Center Act, Cal. Educ. Code § 38130
8    *et seq*. The Civil Center Act requires public school districts to grant use of public school facilities
9    to citizens, parent teacher associations, scout troops, and other organizations for certain purposes,
10   including recreational meetings and religious services. *See* Cal. Educ. Code § 38130. Defendants'
11   position appears to be that the PTA decided the parameters of the tree lighting event and made the
12   decision not to grant Ms. Lyons' request to display the inflatable menorah.

13   Plaintiffs have submitted Ms. Lyons' declaration statement that the PTA President agreed
14   to inclusion of the menorah but deferred to Principal Marden as the final authority on the subject.
15   *See* Lyons Decl. ¶ 16, ECF 2-2. Ms. Lyons states in her declaration that it is her impression, based
16   on her interactions with the PTA President, that Principal Marden controls the PTA. *See id.* ¶ 17.
17   Plaintiffs also submit evidence that an email sent to Ms. Lyons from "The PTA Board," stating
18   that any items brought to the tree lighting must fit within a paper lunch bag, actually was sent by
19   School staff. *See id.* ¶¶ 22-23. Finally, Plaintiffs submit emails sent to Ms. Lyons from Principal
20   Marden and Superintendent Knight advising her that the menorah would not be included in the
21   tree lighting event. *See id.* ¶¶ 40-43 & Exhs. J-K. The declaration of Principal Marden, submitted
22   by Defendants, does not refute Plaintiffs' assertion that he controls the PTA. No declaration of
23   Superintendent Knight is submitted. On this record, the Court finds that Plaintiffs have submitted
24   uncontroverted evidence that Defendants were involved in the decision to exclude her proposed
25   menorah display from the tree lighting event.

26   Second, the Court notes that because the only named Defendants in this suit are the District
27   and two of its officials sued in their official capacities, Plaintiffs' alleged constitutional violations
28   must be pleaded and proved under the standards set forth in *Monell v. Dep't of Soc. Servs. of the*

*City of New York*, 436 U.S. 658 (1978). "The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell*, 436 U.S. at 694). *Monell* has been extended to "municipalities and other local governing bodies such as school districts." *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Finally, "[i]n an official-capacity suit, the government entity is the real party in interest and the plaintiff must show that the entity's policy or custom played a part in the federal law violation." *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996).

Plaintiffs' complaint does not expressly mention *Monell*. Claim 1, brought under the Establishment Clause, alleges that Defendants have a "custom, policy, and practice of promoting and inculcating Christian beliefs by effectively banning participation in school-sponsored events for non-Christian activities." Compl. ¶ 53. The Court therefore construes Claim 1 as a *Monell* claim. The remaining claims in the complaint do not expressly refer to a custom, policy, or practice. However, those claims do incorporate by reference all previously stated paragraphs. *See* Compl. ¶¶ 54-57. Accordingly, the Court construes all of the claims in the complaint to be asserted under *Monell*.

The Court next addresses each of Plaintiffs' claims in turn.

### A. Claim 1 – First Amendment Establishment Clause

Claim 1 is asserted under the Establishment Clause of the First Amendment. The Establishment Clause protects against the "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971) (internal quotation marks and citation omitted). In *Lemon*, the Supreme Court articulated a three-prong test for determining whether government activity is lawful under the Establishment Clause. *See id.* To be lawful, the challenged action: (1) must have a valid secular purpose; (2) its principal or primary effect must be one that neither advances nor inhibits religion; and (3) it must not foster an excessive government entanglement with religion. *See id.*

Plaintiffs contend that the tree lighting does not have a valid, secular purpose (prong 1), because it is intended to encourage the display of religious objects on a Christmas tree. Moreover,

1    Plaintiffs contend that the event advances Christian religions over other religious (prong 2) by
2    allowing display of Christian holiday symbols – the tree and ornaments – but banning display of
3    non-Christian holiday symbols such as a menorah.  Third, Plaintiffs argue that Defendants have
4    been sufficiently involved in the process of planning the tree lighting event that they are
5    excessively entangled with the religious aspects of the event (prong 3).

6    Defendants argue that they have not referred to the tree lighting event as involving a
7    "Christmas" tree.  Even assuming that the event is viewed as involving the decoration and display
8    of a Christmas tree, however, that would not implicate the Establishment Clause.  The Supreme
9    Court has held that "[t]he Christmas tree, unlike the menorah, is not itself a religious symbol."
10   *Cty. of Allegheny v. Am. C.L. Union Greater Pittsburgh Chapter*, 492 U.S. 573, 616 (1989),
11   *abrogated on other grounds by Town of Greece, N.Y. v. Galloway*, 572 U.S. 565 (2014).
12   "Although Christmas trees once carried religious connotations, today they typify the secular
13   celebration of Christmas."  *Id*.

14   In light of the Supreme Court's definitive statement on the issue, Plaintiffs have not shown
15   that the law and facts clearly favor their position on their Establishment Clause claim.

16   **B.    Claim 2 – First Amendment Free Speech**

17   In Claim 2, Plaintiff alleges that Defendants have violated Ms. Lyons' free speech rights
18   under the First Amendment by denying her request to bring a menorah to the tree lighting event.

19   "The standards that we apply to determine whether a State has unconstitutionally excluded
20   a private speaker from use of a public forum depend on the nature of the forum."  *Good News*
21   *Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001).  "When the State establishes a limited public
22   forum, the State is not required to and does not allow persons to engage in every type of speech."
23   *Id*.  "The State's power to restrict speech, however, is not without limits," as "[t]he restriction
24   must not discriminate against speech on the basis of viewpoint, and the restriction must be
25   reasonable in light of the purpose served by the forum."  *Id*. (internal quotation marks and citation
26   omitted.

27   The parties dispute whether the tree on School grounds constitutes a limited public forum.
28   Plaintiffs argue that the School is a limited public forum, and that Defendants unlawfully

discriminated against Ms. Lyons' proposed expression on the basis of religion. Defendants argue that the tree site is a nonpublic forum. Even assuming that the tree site is a limited public forum, however, Plaintiffs have not demonstrated that the law and facts clearly favor their position that Defendants are discriminating against Ms. Lyons on the basis of viewpoint and that the preclusion of the inflatable menorah is unreasonable in light of the purpose served by the limited public forum. As discussed above, the purpose of inviting the community onto school grounds is to celebrate the holidays with a tree lighting ceremony. Defendants have imposed what they contend are reasonable time, place, and manner restrictions on the celebration. Plaintiffs have not cited any case establishing that they may insist on participation in the celebration in a different manner, *i.e.*, by Ms. Lyons' display of a 6-foot inflatable menorah.

*Lamb's Chapel*, cited by Plaintiffs in their brief and at oral argument, does not support their position. *See Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993). In that case, a school district opened its facilities for "social, civic, and recreational" purposes, but banned use of the facilities for religious purposes. The Supreme Court held that the denial of a church's request to use the facilities to show films on family values and child-rearing because they were religion oriented, where such films otherwise would have been permitted, ran afoul of the First Amendment. *See id.* at 393-94. *Lamb* did not hold or even suggest that the church would have been permitted to show its films at the event of another group that had reserved the facilities for a particular date. Defendants point out that they have offered Ms. Lyons the opportunity to reserve School grounds for her own event, at which she may display the menorah. Ms. Lyons, however, wishes to participate in the tree lighting event by displaying her menorah.

Plaintiffs have not demonstrated that the law and facts clearly favor their position on the Free Speech claim.

**C.     Claim 3 – First Amendment Free Exercise Clause**

Claim 3 is asserted under the Free Exercise Clause of the First Amendment. "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). Plaintiffs have not explained how disallowing Ms. Lyons' display of an inflatable menorah

at a particular event, the tree lighting scheduled for December 10, 2021, substantially burdens Plaintiffs' ability exercise their faith. They certainly have not demonstrated that the law and facts clearly favor their position on their Free Exercise Clause claim.

### D. Claim 4 – Fourteenth Amendment Equal Protection Clause

Claim 4 is asserted under the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs' TRO application does not address this claim.

### E. Claim 5 – First Amendment Retaliation

In Claim 5, Plaintiffs allege that Defendants retaliated against Ms. Lyons for exercising her First Amendment rights. "To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (internal quotation marks and citation omitted). Plaintiffs contend that Defendants have retaliated against her for constitutionally protected conduct, including requesting to display a menorah at the tree lighting. Plaintiffs believe that such retaliation included denying her request to display the menorah, humiliating her by directing School families to disregard her flyer, and threatening her with discipline if she exercises her First Amendment rights.

This record does not "clearly favor" Plaintiffs' interpretation of events. The evidence before the Court gives rise to an alternative inference that Defendants were simply enforcing what they perceived to be reasonable time, place, and manner limitations on the tree lighting event. Moreover, in order to prevail on this claim under *Monell*, Plaintiffs must show that the alleged retaliatory conduct was pursuant to a custom, policy, or practice of the District. Plaintiff has not identified a custom, policy, or practice with adequate specificity.

### F. Conclusion

For the foregoing reasons, Plaintiffs' TRO application is DENIED. This ruling reflects *only* the Court's determination that at this stage of the proceedings, Plaintiffs have not met the high standard required to obtain mandatory injunctive relief. The denial of the TRO application is

1 without prejudice to an application for a preliminary injunction, or to any future appropriate
2 motion on a more developed record.
3     Plaintiffs' allegations of Defendants' systemic endorsement of Christian beliefs and
4 traditions, while disfavoring those of other religions, are very serious.  Plaintiffs' allegations
5 regarding the feelings of exclusion experienced by the minor children are particularly troubling.
6 The Court has formed no opinion as to the potential merit of Plaintiffs' broader claims, which go
7 beyond their request for injunctive relief relating to the tree lighting.

**IV. ORDER**

The TRO application is DENIED.

Dated:  December 10, 2021

_____
BETH LABSON FREEMAN
United States District Judge